This is an appeal by Harold Moss Ware, Jr., and Teena Leigh Chaney Watts from a summary judgment in favor of Preferred Risk Mutual Insurance Company in a declaratory judgment action. We affirm.
On November 5, 1975, Preferred Risk issued a policy of automobile liability insurance to Harold Ware, father of defendant Ware, which provided coverage for the family's 1973 Ford automobile. On November 11, 1975, Ware, while driving the family car, was involved in an accident on I-59 in Tuscaloosa County, Alabama. Teena Chaney Watts, a passenger in Ware's car and also Ware's stepsister, was injured in the accident. Preferred Risk investigated the accident and paid all medical bills incurred by Teena Watts.
Teena Watts filed suit against Ware on November 10, 1976, seeking damages for injuries she sustained in the accident. Ware did not answer, and a default judgment in favor of Watts and against Ware in the amount of $20,000 was entered on February 19, 1980.
Preferred Risk then filed this action for declaratory judgment against Ware and Watts, requesting the trial court to hold it free of any liability for the default judgment against Ware. Preferred Risk alleged that Ware, after having been served with *Page 173 
the suit papers filed against him by Watts, failed to forward those papers to Preferred Risk, as required under the provisions of Ware's policy. Preferred Risk further claimed that, as a result of Ware's failure to notify his insurance carrier, coverage was no longer afforded, and that Preferred Risk was not liable for any judgments entered against Ware as a result of Watts's suit.
Ware did not file a response to this action; Watts filed an answer and counterclaim, in which she asserted an uninsured motorist claim against Preferred Risk.
Additionally, Preferred Risk served Ware with its request for admission of certain facts, among them the facts that Ware never reported to Preferred Risk, until after February 19, 1980, that Watts had filed suit against him, and that a default judgment had been entered against him. Ware again failed to respond; therefore, under Rule 36 (a), Alabama Rules of Civil Procedure, all matters raised in the request for admission were admitted.
Preferred Risk filed motions for summary judgment on both the declaratory judgment claim and Watts's counterclaim. The motions were supported by affidavits from two of Preferred Risk's employees, Ware's statement, and depositions of both Ware and Watts. A motion filed by Watts was the only response filed in opposition to the motions for summary judgment. The trial court granted summary judgment in favor of Preferred Risk. Ware and Watts appeal. We affirm.
Watts and Ware argue that the trial court erred in granting summary judgment in favor of Preferred Risk because there was a material issue of fact on the question of notice of the suit being furnished to Preferred Risk by Ware. No issue of fact exists on this question. The insurance policy contains a standard provision which requires as a condition precedent to any action on the policy that the suit papers in any action against the insured be forwarded immediately to the company. There is no factual dispute, and it is in fact admitted by both Ware and Watts, that neither defendant forwarded any suit papers at any time to Preferred Risk. Neither Ware nor Watts informed Preferred Risk or any of its representatives that suit had been filed against Ware until after damages had been proved and a default judgment entered — some thirty-nine months after suit was commenced. There is no dispute on this issue, and summary judgment was correctly entered in favor of Preferred Risk.
The failure of the insured to comply within a reasonable time with a provision in an automobile liability policy requiring the forwarding of suit papers "release[s] the insurer from the obligations imposed by the contract, although no prejudice may have resulted." Standifer v. Aetna Casualty and Surety Co.,319 F. Supp. 1385 (N.D.Ala. 1970); American Fire and Casualty Co. v.Tankersley, 270 Ala. 126, 116 So.2d 579 (1959).
The purpose of the provision that the insured immediately forward legal process to the insurer is to afford the insurer an opportunity to control litigation. Brown v. State Farm Mut.Auto. Cas. Ins. Co., 506 F.2d 976 (5th Cir. 1975). Preferred Risk never had that opportunity in this case. Ware violated that provision of the policy which required him to forward suit papers to the insurer within a reasonable time. He offered no excuse for his failure to do so. Therefore, the company had no obligation to defend the personal injury suit.
Ware and Watts next contend that a Preferred Risk agent waived the policy requirement of forwarding the suit papers, and that Preferred Risk should be estopped from asserting Ware's failure as a defense. Whether this is true or not makes no difference in this case since Preferred Risk is relieved of liability by virtue of Watts's failure to forward suit papers as required by another provision of the policy discussed above. The undisputed facts in this case, however, do not support this contention. Ware alleges that he informed James Vines, a sales agent of Preferred Risk in Bessemer, Alabama, of the lawsuit approximately two months after the accident in November, 1975, and that Vines assured him that *Page 174 
the matter would be taken care of. But, the record shows that Watts did not file suit against Ware until November 10, 1976, twelve months after the accident. Therefore, Preferred Risk could not have waived the notice requirement a year in advance of the filing of the lawsuit.
Watts finally argues that, if Preferred Risk escapes liability on its liability coverage of Ware because he violated the notice provisions of the policy, then Ware becomes an uninsured motorist, and she then becomes entitled to coverage under the uninsured motorist provision of the policy. The argument is an interesting one, but not persuasive in this case.
Alabama's uninsured motorist statute, Ala. Code 1975, §32-7-23, authorizes "insurance for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles" (emphasis added). The intent of the uninsured motorist coverage issued by Preferred Risk is stated in Ware's policy in similar fashion:
 "To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called `bodily injury,' sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured motor vehicle." (Emphasis added.)
We note that, although § 32-7-23 is entitled "Uninsured Motorist Coverage" and is frequently referred to in that manner, both the statute and insurance policies deal with the motor vehicle which is uninsured, not the motorist. Lefeve v.State Farm Mut. Auto. Ins. Co., 527 F. Supp. 492, 494 n. 4 (N.D.Ala. 1981).
Section 32-7-23 itself does not define an uninsured motor vehicle, and prior Alabama cases which have done so did not involve a situation where liability coverage is initially present but coverage is later denied, thus raising the uninsured motorist question in the posture in which it is presented here. Wilbourn v. Allstate Ins. Co., 293 Ala. 466,305 So.2d 372 (1974); Higgins v. Nationwide Mut. Ins. Co.,291 Ala. 462, 282 So.2d 301 (1973). Therefore, we must examine the language of pertinent provisions of the policy to determine whether, in fact, an "uninsured motor vehicle" is involved in the present case.
The following definitions are found within "Part IV, Protection Against Uninsured Motorists," of Ware's liability policy:
 "`[I]nsured' means: (a) the named insured and any relative; (b) any other person while occupying an insured automobile;
". . .
 "`[I]nsured automobile' means: (a) an automobile described in the policy for which a specific premium charge indicates that coverage is afforded.
". . .
 "`[U]ninsured motor vehicle' includes . . .: (a) an automobile or trailer with respect to the ownership, maintenance or use of which there is . . . a bodily injury liability bond or insurance policy applicable at the time of the accident but the company writing the same denies coverage thereunder. . . . (Emphasis added.)
". . .
 "[B]ut the term `uninsured motor vehicle' shall not include: (1) an insured automobile or an automobile furnished for the regular use of the named insured or a relative." (Emphasis added.)
The exclusion numbered (1) is applicable to this case.
One writer has collected the cases from other jurisdictions construing similar language and has said:
 "When a passenger who is an occupant of an insured vehicle is precluded from recovering from the driver of that vehicle (as for example where the insurer denies coverage for lack of cooperation by the driver, or where a provision such as a household family member or fellow employee exclusion is invoked by the insurer), the issue is raised as to whether such a passenger may then seek indemnification *Page 175 
under the uninsured motorist endorsement. . . . In this type of case, claimants have typically argued that if the insurer is allowed to avoid providing coverage for a negligent driver under the liability insurance — then the driver should be considered an uninsured motorist, and the passenger should be allowed to recover under the uninsured motorist endorsement. In such cases courts have often rejected this argument on the theory that the endorsements provide that `the term uninsured motor vehicle shall not include . . . a vehicle defined herein as an insured automobile,' and that the parties have the right to contract for the type of insurance coverage they want (as long as the terms are not contrary to statutory requirements)."
A. Widiss, A Guide to Uninsured Motorist Coverage, Section 2.10 (Supp. 1981).
The Supreme Court of Florida rejected the claimant's argument in Reid v. State Farm Fire and Cas. Co., 352 So.2d 1172 (Fla. 1977), where the household exclusion was invoked by the insurer to deny liability coverage. That Court said:
 "Appellant contends that if she cannot recover upon the first appeal [wherein liability coverage was sought], she can recover under the uninsured motorist provision of the policy, which provides uninsured motorist coverage to her father and the members of his family residing in the same household. However, another exclusion provides that an `uninsured motor vehicle' may not be the vehicle defined in the policy as the insured motor vehicle. In other words, her father's car can not be an uninsured motor vehicle under the terms of the policy, even though, as we held in the first appeal, it is in fact uninsured as to her.
 "We hold that the family car in this case is not an uninsured motor vehicle. It is insured and it does not become uninsured because liability coverage may not be available to a particular individual. Taylor v. Safeco Insurance Co., 298 So.2d 202 (Fla. 1st DCA 1974); Centennial Insurance Co. v. Wallace, 330 So.2d 815 (Fla. 3d DCA 1976).
 "We recognize, as a general rule, that an insurer may not limit the applicability of uninsured motorist protection. Hodges v. National Union Indemnity Co., 249 So.2d 679 (Fla. 1971); Mullis v. State Farm Mutual Automobile Insurance Co., 252 So.2d 229 (Fla. 1971); Salas v. Liberty Mutual Fire Insurance Co., 272 So.2d 1 (Fla. 1972). We believe, however, that the present case is factually distinguishable from previous cases and is an exception to the general rule. Here the family car, which is defined in the policy as the insured motor vehicle, is the same vehicle which appellant, under the uninsured motorist provision of the policy, claims to be an uninsured motor vehicle. We find no merit in appellant's argument that this exclusion conflicts with Section 627.727, Florida Statutes (1975)."
352 So.2d at 1173-74.
This case is very similar on the facts, and we are persuaded that the Florida Court correctly construed the exclusion where the same vehicle is involved in the claim for liability coverage and the uninsured motorist coverage, as is the case here.
Appellants argue that the exclusion conflicts with § 32-7-23, and, thus, is void. It is true that where an exclusion in a policy is more restrictive than the uninsured motorist statute, it is void and unenforceable. Alabama Farm Bureau Mut. Cas.Ins. Co. v. Mitchell, 373 So.2d 1129 (Ala.Civ.App. 1979). That rule is inapplicable here, where the claimant has no statutory right to uninsured motorist coverage.
This is not to say that Watts falls outside the statutorily mandated uninsured motorist coverage. Being an insured under the liability provisions of the policy, her right to uninsured motorist coverage cannot be more restrictive than the statute. But the statute necessarily contemplates that the motorist against whom liability is sought to be imposed is operating an uninsured vehicle. Within the context of the issue presented here, the policy provision excluding the automobile operated by Ware does not offend the statute. *Page 176 
The judgment of the trial court is affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and BEATTY, JJ., concur.